J-S50015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: L.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.S., BIRTH MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 527 WDA 2018 |

Appeal from the Order April 9, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000008-2018

BEFORE: BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 22, 2018**

C.S. ("Mother") appeals from the April 9, 2018 orphans' court order that involuntarily terminated her parental rights to her son, L.S.[1] We affirm.

The Allegheny County Office of Children, Youth and Families ("CYF") has an extensive history with this family, beginning with L.S.'s September 2014 birth, when Mother tested positive for cocaine, opiates, Subutex, and benzodiazepines. L.S. was immediately removed from Mother and placed into foster care. The juvenile court adjudicated him dependent on September 26, 2014; however, he was returned to Mother on March 10, 2015, approximately six months later. CYF closed the case on July 14, 2015.

---

[1] By separate order entered on the same date, the orphans' court involuntarily terminated the parental rights of the biological father, T.P. ("Father"), who did not appeal.

Thereafter, on October 20, 2016, CYF resumed contact with the family when police took L.S. into protective custody after Mother left him unsupervised at home at 1:30 a.m. The juvenile court removed L.S. from Mother's care and placed him in his current pre-adoptive foster home. As a result of the incident, Mother pled guilty to endangering the welfare of a child ("EWOC"), and was sentenced to two years probation with conditions to complete a drug and alcohol evaluation and treatment, if necessary, and to enroll and complete a parenting class. The Commonwealth withdrew a concomitantly filed charge of possession of drug paraphernalia.

The juvenile court adjudicated L.S. dependent a second time on November 17, 2016. The ensuing family service plan ("FSP") that CYF developed for Mother included the primary objectives to: (1) complete a drug and alcohol evaluation; (2) submit random urine screens; (3) attend a parenting program; (4) participate in mental health treatment; (5) maintain supervised visitation with L.S.; and (6) acquire appropriate housing. In addition, the juvenile court ordered Mother to participate in a dual diagnosis program in order to address her substance abuse and mental health problems.

Shortly after the adjudication hearing, Mother was arrested for possession of a controlled substance after the police recovered a bag of heroin, a Suboxone strip, and a used crack pipe from her home. She was convicted of one count of possession and the remaining charges were withdrawn. The trial court imposed twelve months probation.

On January 9, 2018, CYF filed a petition to involuntarily terminate Mother's parental rights to L.S. pursuant to 23 Pa.C.S. § 2511(a) and (b). The orphans' court appointed counsel for Mother. Cynthia Moore, Esquire, the attorney appointed as the guardian *ad litem* during the dependency proceedings, reprised that role and served as L.S.'s legal counsel.[2] During the termination of parental rights hearing, CYF presented testimony from Malika Mason, the CYF caseworker assigned to the family, and Neil Rosenblum, Ph.D., the court-appointed psychologist who performed an individual evaluation of Mother and interactional evaluations of Mother with L.S., and L.S. with his foster parents. Significantly, Dr. Rosenblum diagnosed Mother with an opioid disorder, stimulant disorder with cocaine dependency, unspecified depressive disorder, unspecified post-traumatic stress disorder, and antisocial personality

---

[2] Pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, which our Supreme Court has defined as a child's preferred outcome. **In re T.S.**, __ A.3d __, 2018 WL 4001825 at * 1 (Pa. 2018) (citing **In re Adoption of L.B.M.**, 161 A.3d 172, 174 (Pa. 2017)). The **T.S.** Court confirmed that a guardian *ad litem* who is an attorney may act as legal counsel pursuant to § 2313(a) as long as the dual roles do not create a conflict between the child's legal and best interests. As it relates to minors that are incapable of expressing their preferred outcome, the High Court explained, "if the preferred outcome of the child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed 'to represent the child,' 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings." **Id**. at *10. Instantly, we discern no conflict in Attorney Moore's representation of the legal interests and best interests of her three-year-old client.

traits. Attorney Moore called to the stand Gail Redman, the foster care coordinator who supervised several of Mother's visitations with L.S. Mother testified on her own behalf. Following the close of evidence, the orphans' court entered its order involuntarily terminating Mother's parental rights to L.S. pursuant to § 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).

Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother raises the following issues for our review.

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of L.S. pursuant to 23 Pa.C.S. § 2511(b)?

Mother's brief at 6.

In matters involving the involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [47 A.3d 817, 826 (Pa. 2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*. The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id*. [at] 827.

We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). As we previously explained, "[t]he trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Thus, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct,

- 5 -

weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998)).

In this case, the orphans' court terminated Mother's parental rights pursuant to § 2511(a)(2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of § 2511(a), as well as § 2511(b), to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Instantly, we affirm the orphans' court's decision to terminate parental under § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and

> medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), and (b).

We first examine the orphans' court's termination of Mother's parental rights under §2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)).

Further, this Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, *supra* at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id*. at 340.

Mother argues that the orphans' court abused its discretion and/or erred as a matter of law in granting the petition to involuntarily terminate her parental rights. Mother's brief at 14. She contends that the evidence clearly established that she demonstrated substantial compliance with her FSP goals. *Id*. Mother's position highlights her participation in parenting programs, and her attendance in dual mental health and drug and alcohol treatment. Likewise, she emphasizes her compliance with directives to maintain a regimen of medication, obtain additional mental health therapy for past trauma, and acquire appropriate housing. Finally, Mother contends that she visited L.S. consistently. *Id*.

In addition, Mother disputes Dr. Rosenblum's expert finding that she presents physical and emotional risks to L.S. *Id*. at 15. She stresses that, despite Dr. Rosenblum's report that she behaved inappropriately during her visits with L.S. in the past, Dr. Rosenblum did not directly observe any irritability or agitation. *Id*. at 15. Moreover, Mother claims that, while Dr. Rosenblum's testimony discussed her mental health diagnosis and prognosis, it did not address the effect of those findings on her ability to care for L.S. *Id*. at 19. She further argues that Dr. Rosenblum relied upon extensive collateral information to develop his opinion, including a letter purportedly written by Mother's adult daughter, which he neglected to verify as authentic. *Id*. at 19-20. The missive that Mother challenges described her as selfish and unable to take ownership or show remorse for what she caused her daughter to

endure as a child. *Id*. at 38-39. Dr. Rosenblum stated that he did not rely on the letter provided by Mother's daughter, but found it constituted relevant collateral information. *Id*. at 49.

Finally, Mother challenges the veracity of the evidence that CYF presented to demonstrate her mental instability and danger to L.S. She asserts that no nexus exists between the agency's contentions and her parenting ability. *Id*. at 20. In sum, Mother contends that since the record demonstrates that she remedied her parental incapacity related to her ability to care for L.S. and complied with her FSP goals, the orphans' court erred in terminating her parental rights pursuant to § 2511(a)(2). *Id*. at 20-21. For the following reasons, we reject Mother's core assertion that clear and convincing evidence did not support the orphans' court's finding that termination was warranted under the facts of this case.

In finding that CYF adduced clear and convincing evidence to establish the statutory grounds to terminate parental rights pursuant to §2511(a)(2), the orphans' court reasoned, in pertinent part, as follows:

> At the time of the termination proceeding, [L.S.] was approximately three (3) years and seven (7) months old. In the sum total of his forty-three (43) month life, he has been removed from Mother twice and he has been adjudicated dependent twice, all for the same concerns[:] Mother's drug and alcohol use[;] the interplay with her mental health concerns[;] and her ability to appropriately parent him and meet his needs. [L.S.] has spent a total of twenty-three (23) months of his life in foster care as a result of Mother's chronic issues. The facts unequivocally establish that Mother was clearly unwilling or unable to even make reasonable progress in order to remedy the conditions that led to his second removal and second adjudication, and as such, she has

rendered herself unable to assume a role where she is able to provide essential parental care for [L.S.].

. . . .

Mother has regrettably not remedied the conditions that led to L.S.'s removal. Most importantly, Mother has not addressed the core issues preventing reunification and this [c]ourt finds it unsettling that Mother does not seem to grasp the impact that her lifestyle and continued choices has had on her ability to remedy the conditions that led to the removal.

Trial Court Opinion, 5/1/18, 8-10 (citations omitted).

The certified record supports the orphans' court's decision. During the termination hearing, Ms. Mason, the CYF caseworker assigned to this case in late September of 2017, testified about the agency's extensive involvement with the family since 2014, when L.S. was first removed from Mother as an infant and adjudicated dependent. N.T., 10/31/17, at 5. She continued that, following his reunification with Mother, L.S. was removed again on October 20, 2016, because Mother left him alone at home at 1:30 a.m. *Id*. at 6. He was adjudicated dependent a second time on November 17, 2016. *Id*. at 7.

As it relates to Mother's compliance with the present FSP goals, Ms. Mason testified that Mother secured housing in late December of 2017, currently attends drug and alcohol treatment, and is compliant with her treatment program. *Id*. at 8-9. Ms. Mason confirmed that Mother also participates in mental health therapy. *Id*. at 11-12.

Despite those successes, however, Mother was unable to address her substance abuse. Since October of 2016, Mother has either failed or refused

to submit fifteen of twenty urine screens. *Id*. at 10. Similarly, Mother's attitude toward improving her parenting skills was equally lax. Ms. Mason stated that Mother failed to satisfy the program requirements for a parenting class and, therefore, she did not receive a certificate of completion. *Id*. at 11, 22-23. She confirmed that Mother's inability to provide appropriate and safe parental supervision remains the agency's chief concern. *Id*. at 14.

Dr. Rosenblum raised similar worries during his testimony regarding his evaluation of Mother on February 26, 2018. *Id*. at 33. Specifically, he was troubled by Mother's eighteen-to-twenty-year history of substance abuse. *Id*. He was also troubled by Mother's chronic use of opioids, including the utilization of a Suboxone maintenance program for the last eight years. *Id*. at 33-34. In addition, Dr. Rosenblum noted that Mother's drug use cultivated "a concerning history of criminal activity." *Id*. at 34. Ultimately, Dr. Rosenblum concluded that Mother had difficulty regulating her moods and emotions, refused to accept responsibility for her actions, and blamed others for her problems. *Id*. He noted that there are a number of reports about Mother's erratic behavior. *Id*. at 35. Examples of Mother's combative nature include an incident during a supervised visitation with L.S. and an outburst during the court-ordered psychological evaluation.[3] As it relates to the latter episode, Mother became agitated during her first psychological assessment,

---

[3] Likewise, the foster parents complained that Mother made telephone calls and text messages to them at inappropriate hours of the night. *Id*. at 75-76.

stormed out of the office, and refused to cooperate with the testing. *Id*. at 36. While Mother returned on another day to complete the psychological evaluation, she remains oblivious of her inimical demeanor. Indeed, she denies any problems with anger management, impulse control, or interacting with others. *Id*. at 37. Likewise, Dr. Rosenblum confirmed that Mother does not see herself as displaying irritability or poor judgment. Instead, she is preoccupied with what she perceives as her positive attributes, such as being resolute, which Dr. Rosenblum characterized as an overly optimistic and unrealistic assessment of current functioning. *Id*.

Importantly, the record sustains the orphans' court's determination that Mother's parenting deficiencies impede L.S.'s development. Dr. Rosenblum opined that Mother loves L.S., enjoys spending time with him, and tries to be accommodating. *Id*. 40. However, L.S. requires consistency, discipline, structure, and a parent who will respond calmly to his outbursts. *Id*. at 43. Essentially, he reasoned that Mother's parenting skills are inadequate to address L.S.'s behavioral problems, aggression, impulse control, and history of severe tantrums. *Id*. at 43, 51. In this vein, he highlighted that Mother lacked an understanding of L.S.'s developmental functioning. *Id*. 51. In sum, Dr. Rosenblum concluded that, while Mother is attempting to stabilize her life by obtaining housing and attending drug and alcohol treatment, she is not making any significant changes to her behavior, and most importantly, she does not demonstrate an ability to provide L.S. with the stability, attention,

and emotional support that he requires at this stage of his development.  *Id.* at 43-44.  In fact, Mother did not recognize her son's behavioral problems and repeatedly stated that L.S. did not require the therapy that CYF obtained for him.

Finally, we review the testimony presented by Ms. Redman, the foster care coordinator who supervised the majority of Mother's visitations with L.S. since March 2017.  *Id*. at 74.  She reported Mother as attending fifty-four of seventy-eight visitations since December 2016.  Over that period, Mother arrived late several times and was often argumentative.  *Id*. at 76-77.  Similarly, some of Mother's visits with L.S. were terminated early because Mother appeared intoxicated—stumbling, falling asleep on her feet, and unable to focus.  *Id*. at 76.  Even when she was attentive, Mother demonstrated poor parenting skills during a couple of the visitations by engaging in discussions in the presence of L.S. about the termination proceedings and then becoming enraged and argumentative when the caseworker reprimanded her for the improper conduct.  *Id*. at 76-77, 81.

The foregoing testimony belies Mother's assertion that she made diligent efforts towards the reasonably prompt assumption of parental responsibilities. At the time of the evidentiary hearing, then three-and-one-half-year-old L.S. had been removed from Mother's care and adjudicated dependent on two separate occasions.  He has been in foster placement due to the second adjudication since approximately October of 2016, when he was two years

old. Over that period, Mother consistently neglected her parental obligations. She did not complete parenting classes, submit random urine screens, or behave appropriately during the supervised visitations. She also admitted during the hearing that she has not seen her trauma counselor for two months. Significantly, Dr. Rosenblum testified that Mother's unresolved issues with past trauma and her inadequate parenting skills combined to impair her ability to care for L.S., provide the child with needed emotional support and stability, and address his behavioral problems.

Accordingly, insofar as Mother's repeated and continued incapacity, abuse, neglect, or refusal to perform her parental duties has caused L.S. to be without essential parental care, control, or subsistence necessary for his physical or mental well-being, we find the competent evidence in the certified record supports the orphans' court's decision to terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2). *In re Adoption of S.P.*, *supra* at 826-27.

Having found that the orphans' court did not abuse its discretion in terminating Mother's parental rights under § 2511(a)(2), we next determine whether termination was proper under § 2511(b). Our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791

- 14 -

(Pa.Super. 2012). In **In re E.M.**, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. **In re K.M.**, 53 A.3d at 791.

**In re T.S.M.**, **supra** at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." **In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted).

Mother contends that the orphans' court erred in finding that CYF presented clear and convincing evidence that involuntary termination of Mother's parental rights would best meet the developmental, physical, and emotional needs and welfare of L.S. Mother's brief at 21. She argues that CYF relied heavily on Dr. Rosenblum's testimony, utilizing a comparative assessment between L.S.'s relationships with Mother and foster parents, respectively. **Id**. at 22. Mother contends that it is undisputed that she loves L.S., and wishes to remain a part of his life, and points out that Dr. Rosenblum opined that L.S. would benefit from future contact with Mother. **Id**. at 23. She further submits that she has a meaningful bond with L.S. and that the deprivation of that bond and their love for each other is unnecessary. **Id**. Thus, she maintains that CYF did not meet its burden of proof under § 2511(b). **Id**.

In contrast to Mother's assertions, the orphans' court found clear and convincing evidence that severing the parent-child bond would not cause extreme harm to L.S. Trial Court Opinion, 5/1/18, at 14. The orphans' court noted Dr. Rosenblum's testimony that L.S. is well on his way to establishing a secure identity in his current foster home, and considers his foster parents, rather than Mother, as his "mom" and "dad." *Id*. at 13. The orphans' court determined that the evidence established that the termination of parental rights would provide L.S. with much needed stability and permanence that he requires at this stage of his development. *Id*. In sum, the orphans' court concluded that the developmental, physical and emotional needs and welfare of L.S. would best be served by terminating Mother's parental rights. *Id*.

The certified record sustains the orphans' court's analysis. At the termination hearing, Dr. Rosenblum noted that L.S. had been at his foster home for about fourteen months and refers to his foster parents as "mom" and "dad," and views their son as his "brother." N.T., 10/31/17, at 41. The two boys share a close bond. *Id*. at 41-42. L.S. is developing a secure identity within the family, which he considers his own. *Id*. at 43. In addition, Dr. Rosenblum stressed that, unlike Mother, foster parents are very attentive, nurturing, and understanding of L.S.'s behavioral problems. *Id*. at 42. They are consistent with discipline, strive to help L.S. express his emotions, and aid him in developing self-soothing skills, abilities that have proven difficult for him to master. *Id*. Dr. Rosenblum testified that L.S. was affectionate,

animated, and content with foster parents. He developed an attachment to the foster family who cultivates a stability that is essential for him to subdue his aggressive behavior. *Id*. at 42-43.

Ultimately, Dr. Rosenblum concluded that terminating Mother's parental rights in anticipation of adoption would serve L.S.'s developmental, physical and emotional needs and welfare. *Id*. Furthermore, he reasoned that termination of Mother's parental rights would not cause significant psychological harm to L.S. because Mother is not able to provide the stability, emotional support, and proper discipline that L.S. needs to develop and overcome his behavioral problems. *Id.* at 44. As it relates to the remnants of the parent-child relationship, Dr. Rosenblum explained that, although it is generally beneficial for a child to maintain contact with a biological parent, continued contact between Mother and L.S. would be detrimental due to Mother's antagonistic relationship with foster parents and her inability to control her destructive impulses. *Id*.

In light of the foregoing evidence, we discern no abuse of discretion or legal error in the orphans' court's decision to terminate Mother's parental rights. The orphans' court considered the nature and extent of the bond L.S. shares with Mother, and determined that severing that bond would not be detrimental. The certified record supports the orphans' court's determination. While Mother professes to love L.S., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In*

*re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). As we previously stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125.

As we find that the certified record supports the orphans' court's conclusion that CYF presented clear and convincing evidence in favor of terminating Mother's parental rights to L.S. pursuant to 23 Pa.C.S. § 2511(a)(2) and (b), we do not disturb it.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2018